## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

LADEAN DANIELS,
    Plaintiff,

    v.

BRIAN K. MURPHY, et al.,
    Defendants.

No. 3:11-cv-00286 (SRU)

### RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Pro se plaintiff LaDean Daniels, currently incarcerated at Corrigan-Radgowski Correctional Institution, in Uncasville, Connecticut, commenced this action against correctional officials and employees affiliated with Northern Correctional Institution ("Northern"), alleging that they violated his Eighth Amendment rights, as well as Title II of the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12131 *et seq.* Daniels' amended complaint, filed on November 10, 2011, names former Commissioner Brian K. Murphy, Director of Security Michael LaJoie, Warden Angel Quiros, Deputy Warden Lauren Powers, Health Services Administrator Richard Furey, Dr. Carson Wright, Nurse Erin Dolan, and correctional officers Goodhall and St. John as defendants.[1]

The defendants have moved for summary judgment (doc. # 60). For the reasons that follow, the defendants' motion is granted in part and denied in part.

## I.    Standard of Review

### A.  Motion for Summary Judgment

---

[1] Daniels' complaint names "Angel Quiros" as a defendant. That defendant's name is Angel *Quiros*, and I will refer to him as "Quiros" in this ruling. The clerk is directed to correct the spelling of the name on the docket sheet accordingly.

1

Summary judgment is appropriate when the record demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986) (plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment).

When ruling on a summary judgment motion, the court must construe the facts in the light most favorable to the nonmoving party and must resolve all ambiguities and draw all reasonable inferences against the moving party. *Anderson*, 477 U.S. at 255; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970); *see also Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 523 (2d Cir. 1992) (court is required to "resolve all ambiguities and draw all inferences in favor of the nonmoving party"). The court may not weigh the evidence, even when the court believes such evidence is implausible. *See Anderson*, 447 U.S. at 249; *R.B. Ventures, Ltd. v. Shane*, 112 F.3d 54, 58-59 (2d Cir. 1995). When a motion for summary judgment is properly supported by documentary and testimonial evidence, however, the nonmoving party may not rest upon the mere allegations or denials of his pleadings, but must present sufficient probative evidence to establish a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).

"Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991); *see also Suburban Propane v. Proctor Gas, Inc.*, 953 F.2d 780, 788 (2d Cir. 1992). If the nonmoving party submits evidence that is "merely colorable," or is not "significantly probative," summary judgment may be granted. *Anderson*, 477 U.S. at 249-50.

> The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.  As to materiality, the substantive law will identify which facts are material.  Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted.

*Id.* at 247-48.  To present a "genuine" issue of material fact, there must be contradictory evidence "such that a reasonable jury could return a verdict for the non-moving party."  *Id.* at 248.

If the nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof at trial, then summary judgment is appropriate.  *Celotex*, 477 U.S. at 322.  In such a situation, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Id.* at 322-23; *accord Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (movant's burden satisfied if he can point to an absence of evidence to support an essential element of nonmoving party's claim).  In short, if there is no genuine issue of material fact, summary judgment may enter.  *Celotex*, 477 U.S. at 323.

Where one party is proceeding pro se, the court interprets the pro se party's papers liberally to "raise the strongest arguments [they] suggest[]."  *See Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007).  "The policy of liberally construing pro se submissions is driven by the understanding that '[i]mplicit in the right to self-representation is an obligation on the part of the court to make reasonable allowances to protect pro se litigants from inadvertent forfeiture of important rights because of their lack of legal training.'"  *Id*. (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).  Despite this liberal interpretation, however, an unsupported assertion

cannot overcome a properly supported motion for summary judgment.  *Carey v. Crescenzi*, 923

F.2d 18, 21 (2d Cir. 1991).

## II.   Background[2]

On October 5, 2009, Commissioner Brian K. Murphy directed Warden Quiros and

District Administrator LaJoie to examine safety and security issues in the Security Risk Group

Safety Threat Member ("SRGSTM") program at Northern.  As a result, Murphy authorized a

policy requiring inmates in Phase 1 of the SRGSTM program to remain cuffed with their hands

behind their backs for all movement outside their cells, including during their one hour exercise

period.[3]

On June 22, 2010, Daniels was transferred to Northern, which had been designated as a

facility to house inmates who had been designated as SRGSTM members.  Since 1996, Daniels

had been designated a SRGSTM member due to his affiliation with the 20 Love gang.[4]  State of

Connecticut Department of Correction Administrative Directive 6.14 defines a SRGSTM

member as an inmate

> whose activity, behavior, status as a recognized Security Risk Group leader, and/or
> whose activity, behavior or involvement in an event associated with a Security Risk
> Group jeopardizes the safety of the public, staff or other inmate(s) and/or the security and
> order of the facility.

---

[2] The facts set forth here are taken from the defendants' Local Rule 56(a)(1) Statement
(doc. # 44-2) and Daniels' response to that statement included in his opposition to defendants'
motion for summary judgment (doc. # 66), as well as supporting affidavits and exhibits.  The
facts are undisputed unless otherwise indicated.

[3] The authorization changed the policy set forth in State of Connecticut Administrative
Directive 6.14, Security Risk Groups, effective January 15, 2009.

[4] Daniels was transferred to Northern as a Phase 1 inmate and, after review of his status,
it was determined that he should complete the SRGSTM program. Daniels' SRGSTM
designation continued throughout his years of incarceration and was still in effect when he was
discharged from Northern on May 10, 2010, and when he returned to Department of Correction
custody on June 7, 2010, before being transferred to Northern.

Inmates designated as SRGSTM are required to complete a three-phase program to be considered for removal of the SRGSTM designation.  Phase 1 is the first phase of the SRGSTM program.  Phase 1 inmates, who are all housed in Unit Two East at Northern, are required to remain in their cells twenty-four hours each day, except for the option of: (1) one hour per day, five days per week, for recreation in a controlled area; (2) three fifteen-minute showers per week; (3) three fifteen-minute telephone calls per week; and (4) two thirty-minute non-contact visits per week with immediate family if not on sanctions.[5]  If an inmate in Phase 1 remains discipline-free for the four-month duration of Phase 1, he progresses to Phase 2, which is less restrictive and shorter in duration, and, if successful in Phase 2, he progresses to Phase 3 and is permitted to enjoy his recreation time without restraints.

Defendant Dr. Carson Wright is a physician licensed to practice medicine in the State of Connecticut.  He is employed by the University of Connecticut Health Center, Correctional Managed Health Care and has been assigned to work at Northern for approximately twelve years.  Dr. Wright treated Daniels during the relevant time period of his complaint, from June 2010 to October 2011.

## III.   Discussion

In support of their motion for summary judgment, the defendants argue that: (1) defendants Murphy, LaJoie, and Powers were not personally involved in the incidents giving rise to the complaint and, therefore, cannot be held liable for the alleged constitutional violations; (2) no defendant violated Daniels' Eighth Amendment rights due to the conditions of his confinement or deliberate indifference; (3) Daniels has not stated a claim for a violation of the

---

[5] Inmates are not required to participate in recreation, but if they chose to do so, Phase 1 inmates must attend recreation with their hands cuffed behind their backs.

ADA; and (4) the defendants are entitled to qualified immunity with respect to the claim that Daniels was unconstitutionally handcuffed during recreational periods.[6]

A. Personal Involvement

Daniels alleges that defendants Murphy, LaJoie, and Powers were aware of or approved the handcuffing policy and, therefore, are liable for constitutional violations associated with it. Defendants Murphy, Lajoie, and Powers argue that the claims against them should be dismissed because they were not directly or personally involved in the actions alleged to have violated Daniels' constitutional rights.

Defendant Murphy is a supervisory official and, therefore, cannot be held liable under section 1983 solely for the acts of his subordinates. *See Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985). A plaintiff may show supervisory liability, however, by demonstrating one or more of the following criteria:

> (1) the defendant actually and directly participated in the alleged unconstitutional acts; (2) the defendant failed to remedy a wrong after being informed of the wrong through a report or appeal; (3) the defendant created or approved a policy or custom that sanctioned objectionable conduct which rose to the level of a constitutional violation or allowed such a policy or custom to continue; (4) the defendant was grossly negligent in supervising the correctional officers who committed the constitutional violation; and (5) the defendant failed to take action in response to information regarding the occurrence of unconstitutional conduct.

*See Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (citation omitted). In addition, a plaintiff must demonstrate an affirmative causal link between the inaction of the supervisory official and his injury. *See Poe v. Leonard*, 282 F.3d 123, 140 (2d Cir. 2002).

---

[6] In his response to the Quiros Affidavit, Daniels states: "[t]he plaintiff is not challenging the handcuff policy. Only stating the fact(s), that the plaintiff was forced to attend recreation . . . and wear handcuffs behind the plaintiff's back for (1) hour. The defendants did not accommodate, the plaintiff [sic] 'disability.'" *See* Pl.'s Opp'n to Mot. for Summ. J., Ex. 2, (doc. # 67-2), at 1-2. The defendants have assumed that Daniels intended to challenge the handcuff policy and, in light of my duty to read a pro se party's papers liberally, I will address Daniels' complaint as though he has challenged the handcuffing policy.

In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court found that a supervisor can be held liable only "through the official's own individual actions."  *Id.* at 676.  This decision arguably casts doubt on the continued viability of some of the categories for supervisory liability. The Second Circuit, however, has not revisited the criteria for supervisory liability following *Iqbal*.  *See Grullon v. City of New Haven*, 720 F.3d 133 (2d Cir. 2013).  Because it is unclear whether *Iqbal* overrules or limits *Colon*, the court will continue to apply the categories for supervisory liability set forth in *Colon*.

The defendants admit that Murphy and LaJoie were involved in creating or approving the handcuffing policy.  Murphy authorized the new handcuffing policy and LaJoie appears to have been involved in devising that policy. Accordingly, the defendants' motion for summary judgment on the ground of lack of personal involvement on the part of defendants Murphy and LaJoie is denied with respect to Daniels' Eighth Amendment claim for deprivation of the right to meaningful exercise.

The basis of Daniels' claim against Deputy Warden Powers is that Powers was aware of the policy because she was present on unit rounds with Warden Quiros when Daniels complained to Quiros about the policy, and has admitted awareness of the policy through her acknowledgement of the 2011 Inmate Handbook.  Further, Daniels asserts that he sent grievances to Murphy, LaJoie, and Powers notifying them of the handcuffing policy being enforced at Northern.  Daniels has submitted no evidence in support of these allegations. Accordingly, the motion for summary judgment on the ground of lack of personal involvement is granted with respect to Daniels' deprivation of the right to meaningful exercise claim against defendant Powers.

Daniels alleges that defendant Powers was aware of the denial of his medical treatment requests, and that Murphy and LaJoie are otherwise liable for those denials. Daniels has not submitted evidence of any letters that he sent to defendants Murphy, LaJoie, or Powers regarding his medical treatment, nor has he provided any evidence demonstrating that those defendants were otherwise aware of his medical treatment. Thus, Daniels has not shown that Murphy, LaJoie, or Powers were on notice of the alleged deliberate indifference to his medical needs, and, accordingly, I grant defendants Murphy, LaJoie, and Powers' motion for summary judgment on the ground of lack of personal involvement with respect to Daniels' deliberate indifference claim.

B. Deprivation of the Right to Meaningful Exercise

"It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993); *see also Rhodes v. Chapman*, 452 U.S. 337, 351 (1981). To state an Eighth Amendment claim, an inmate must allege facts demonstrating failure of prison officials to provide for inmates' "basic human needs - e.g., food, clothing, shelter, medical care, and reasonable safety." *DeShaney v. Winnebago County Dept. of Social Servs.*, 489 U.S. 189, 200 (1989).

An inmate may prevail on an Eighth Amendment claim "only where he proves both an objective element–that the prison officials' transgression was 'sufficiently serious'–and a subjective element–that the officials acted, or omitted to act, with a 'sufficiently culpable state of mind,' i.e., with 'deliberate indifference to inmate health or safety.'" *Phelps v. Kapnolas*, 308 F.3d 180, 185 (2d Cir. 2002) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). The objective element is satisfied where the inmate shows that the deprivation he alleges is

sufficiently serious, i.e., that his confinement under the alleged conditions violates contemporary standards of decency.  The subjective element requires the inmate to show that correctional officials were aware of and disregarded a substantial risk of serious harm.  *See id*. at 185-86. Defendants "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and . . . must also draw that inference."  *Farmer*, 511 U.S. at 837.

Both the Supreme Court and the Court of Appeals for the Second Circuit have acknowledged that exercise is a basic human need that must be provided for inmates.  *See Wilson v. Seiter*, 501 U.S. 294, 304-05 (1991); *Williams v. Greifinger*, 97 F.3d 699, 704 (2d Cir. 1996); *Sostre v. McGinnis*, 442 F.2d 178, 193 & n.25 (2d Cir. 1971), *overruled on other grounds as recognized by Davidson v. Scully*, 114 F.3d 12 (2d Cir. 1997).  Also, restrictions on exercise should not be "routine."  Restrictions must be limited to unusual circumstances or situations where restrictions are needed for disciplinary reasons.  *See Hope v. Pelzer*, 536 U.S. 730, 737 (2002) (noting that penological concerns may be considered in reviewing an Eighth Amendment claim); *Bell v. Wolfish*, 441 U.S. 520, 547 (1979) ("[P]rison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.").

The defendants argue that the handcuffing policy does not violate the Eighth Amendment because it does not involve the unnecessary or wanton infliction of pain or punishment and, to the contrary, that it is constitutional in light of the safety and security concerns of inmates and correctional staff, and that Daniels was unrestrained in his cell, where he could exercise more vigorously.  Daniels argues that the handcuffing policy violated his constitutional right to be free

from cruel and unusual punishment and deprived him of a meaningful opportunity to exercise. The defendants point to instances where Daniels played basketball and table tennis, and to a statement in Daniels' medical records that he "rarely misses rec."  *See* Def.'s Mem. in Support of Mot. for Summ. J., Ex. 9 (doc. # 60-9), at 5, 12, 13.  The fact that Daniels occasionally participated in athletic endeavors or rarely missed recreation time does not show that he could meaningfully exercise in his cell.  The most direct evidence defendants submit with respect to Daniels' ability to exercise meaningfully while in his cell comes from Dr. Wright, who states that Daniels could perform calisthenics in his cell with or without  heel lifts and, thus, achieve substantial cardiovascular benefits and improve his overall health.  *See* Wright Aff. (doc. # 60-7), at ¶¶ 19-21.  Daniels argues that he could not exercise meaningfully inside or outside of his cell without proper medical devices.  *See* Pl.'s Opp'n to Mot. for Summ. J. (doc. # 66), at ¶ 15 ("[T]he plaintiff was unable to exercise without adequate medical devices at recreation in Northern . . . ."); *id.*, at ¶ 18 ("The plaintiff could not exercise at outside recreation in "slippers" and he could not rehabilitate his health even in a cell without adequate medical devices and pain management.").  Those facts present disputed issues of material fact with respect to whether Daniels could engage in meaningful exercise in his cell.  Accordingly, defendants' motion for summary judgment with respect to the Eighth Amendment deprivation of exercise claim is denied.[7]

## C. Qualified Immunity

The defendants argue that they are entitled to qualified immunity, even assuming that the handcuffing policy was unconstitutional.  The defendants have the burden of proving the

---

[7] This claim is dismissed against defendant Powers for lack of personal involvement.  *See supra*.

affirmative defense of qualified immunity in a motion for summary judgment or at trial. *See Vincent v. Yelich*, 718 F.3d 157, 166 (2d Cir. 2013).

Qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v, Fitzgerald*, 457 U.S. 800, 818 (1982)).  To determine if an official is entitled to qualified immunity, the court considers whether (1) the facts alleged or shown by the plaintiff state a violation of a statutory or constitutional right by the official and (2) the right was clearly established at the time of the challenged conduct. *See Ashcroft v. al-Kidd*, 563 U.S. ___, ___, 131 S. Ct. 2074, 2080 (2011) (citation omitted).  A negative answer to either question means that immunity from monetary damages claims is appropriate. *Pearson*, 555 U.S. at 236.  The Supreme Court has held that district courts have the discretion to choose which of the two prongs of the qualified immunity standard to decide first in view of the particular circumstances surrounding the case to be decided. *See id.* at 236.

Under the second prong, a right is clearly established if, "at the time of the challenged conduct . . . every 'reasonable official would [have understood] that what he [was] doing violate[d] that right.'" *al-Kidd*, 563 U.S. at __, 131 S. Ct. at 2083 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).  There is no requirement that a case have been decided that is directly on point, "but existing precedent must have placed the statutory or constitutional question beyond debate." *Id.*  "A broad general proposition" does not constitute a clearly established right. *See Reichle v. Howards*, __ U.S. __, 132 S. Ct. 2088, 2094 (2012).  Rather, the constitutional right allegedly violated must be established "in a 'particularized' sense so that the 'contours' of the right are clear to a reasonable official." *Id.* (quoting *Anderson*, 483 U.S. at 640).

11

The defendants do not address the first prong of the qualified immunity standard.  Rather, they assume that Daniels has stated a violation of a constitutional right and argue that in 2010 and 2011 there was no clearly established Second Circuit or Supreme Court law holding that inmates in Phase 1 of the SRGTM Program had the right to exercise without handcuffs on.  In support of this argument, the defendants cite to multiple district court cases within this circuit as well as two Connecticut Superior Court cases holding that recreating in restraints did not rise to the level of an Eighth Amendment violation.  *See* Defs.' Mem. in Supp. of Mot. Summ. J. (doc. # 60-11), at 25-7.  The defendants further contend that, absent any law clearly establishing that an inmate has a right to be free from recreating in restraints, a reasonable officer would not have known that requiring Phase I SRGTM inmates to be handcuffed behind their backs during recreation was unconstitutional.

The Supreme Court has held that prisoners have no right to be housed in comfortable surroundings.  *See Rhodes v. Chapman*, 452 U.S. 337, 347 (1980) (harsh or restrictive conditions are part of the penalty criminal offenders pay for their crimes).  As noted above, A prisoner's conditions of confinement, however, must meet "minimal civilized measures of life's necessities," including exercise. *Wilson*, 501 U.S. at 298, 304-05; *see McGinnis*, 348 F. App'x at 659; *Greifinger*, 97 F.3d at 704; *Anderson*, 757 F.2d at 35; *Sostre*, 442 F.2d at 193-94 & n.25.  In 1996, however, the Second Circuit recognized that an inmate's right to some opportunity to exercise could be limited by legitimate safety and security concerns.  *See Greifinger*, 97 F.3d at 704-05 (citing *Sostre*, 442 F.2d at 193).  Thus, at the time the defendants required Daniels to exercise in handcuffs behind his back, it was clearly established that an inmate had a right to engage in exercise, but that right could be limited by considerations of safety and security on the part of prison officials.

Here, there is a dispute whether Daniels could engage in meaningful exercise in or out of his cell. *See supra.* Furthermore, the defendants have submitted insufficient evidence to support any legitimate safety and security concerns behind the imposition of the policy requiring SRGSTM inmates to be handcuffed behind their backs during recreation.[8] *See McGinnis*, 348 F. App'x at 659 (affirming dismissal on qualified immunity grounds claims alleging violation of inmate's right to exercise in restraints on ground that defendants established at trial that limitations based on safety and security considerations were reasonable). Nor do they offer any evidence of potentially feasible alternative exercise arrangements that were considered prior to implementing the hand-cuffing policy. *See Greifinger*, 97 F.3d at 704-05 (recognizing that deprivation of exercise must be limited to "unusual circumstances" and that feasibility of alternative opportunities for exercise must be considered before imposing restrictions on inmate exercise) (quoting *Mitchell v. Rice*, 954 F.2d 187, 193 (4th Cir.), *cert. denied*, 506 U.S. 905 (1992)). Absent this evidence, the court cannot conclude that it was objectively reasonable for the defendants to believe that their actions did not violate Daniels' right to engage in exercise. *See Gardner v. Murphy,* 2014 WL 887076, at *1 (D. Conn. Mar. 6, 2014) (lack of evidence regarding facts that would demonstrate reasonableness of defendants' actions precluded grant of

---

[8] Two recent decisions of this Court have addressed claims related to the SRGSTM handcuffing policy, and "illustrate[] the type of evidence that defendants would need to submit to defeat this claim." *See Gardner v. Murphy*, 2014 WL 887076, at *1 (D. Conn. Mar. 6, 2014); *Taylor v. Murphy*, 2011 WL 1343883 (D. Conn. Apr. 7, 2011). As in those cases, defendants here have not submitted sufficient evidence to support their motion for summary judgment. Rather, they have submitted, as in *Taylor* and *Gardner* "generic documents describing the policy requiring certain inmates to be cuffed behind their backs whenever they leave their cells" and "general correctional policies describing the origin, rationale, and parameters of the handcuffing requirement." *Gardner*, 2014 WL 887076, at **1, 7. Both *Gardner* and *Taylor* required more, and so do I. In order to grant their motion for summary judgment, the defendants must provide, "evidence proving the need for the handcuff requirement, the justification for applying that requirement to the plaintiff . . . , [and] the availability to the plaintiff of a meaningful opportunity for exercise within his cell." *Gardner*, 2014 WL 887076, at * 7 (citing *Taylor*, 2011 WL 1343883, at **5-6).

summary judgment on qualified immunity grounds); *Taylor v. Murphy*, 2011 WL 1343883, **4-6 (D. Conn. Apr. 7, 2011) (same); *Williams v. Goord*, 142 F. Supp. 2d, 416 428-29 (S.D.N.Y. 2001) (denying motion for summary judgment on ground of qualified immunity because prison officials' belief that actions did not violate inmate's right to exercise would be unreasonable if jury were to find that restraints deprived inmate of meaningful out-of-cell exercise, in-cell exercise was not available, and no justification existed for use of restraints).

The defendants have not met their burden on either prong of the qualified immunity standard. Accordingly, the motion for summary judgment is denied on the affirmative defense that the defendants are entitled to qualified immunity with respect to Daniels' Eighth Amendment deprivation of exercise claim. *See Thomas v. Roach*, 165 F.3d 137, 143 (2d Cir. 1999) ("Summary judgment on qualified immunity is not appropriate when there are facts in dispute that are material to determination of reasonableness."); *Weyant v. Okst*, 101 F.3d 845, 858 (2d Cir. 1996) (holding that matter of officers' qualified immunity could not be resolved as a matter of law because determination whether it was reasonable for officers to believe their actions met established legal principles depended on disputed version of facts).

D. Deliberate Indifference

Deliberate indifference by prison officials to a prisoner's serious medical need constitutes cruel and unusual punishment in violation of the Eighth Amendment. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To prevail on such a claim, a plaintiff must provide evidence of sufficiently harmful acts or omissions and intent to either deny or unreasonably delay access to needed medical care or the wanton infliction of unnecessary pain by prison personnel. *See id.* at 104-06. "[N]ot every lapse in prison medical care will rise to the level of a constitutional violation," *id.*; rather, the conduct complained of must "shock the conscience" or constitute a "barbarous act."

*McCloud v. Delaney*, 677 F. Supp. 230, 232 (S.D.N.Y. 1988) (citing *United States ex rel. Hyde v. McGinnis*, 429 F.2d 864 (2d Cir. 1970)).

There are both subjective and objective components to the deliberate indifference standard. *See Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994), *cert. denied sub nom. Foote v. Hathaway*, 513 U.S. 1154 (1995). Objectively, the alleged deprivation must be "sufficiently serious." *Wilson*, 501 U.S. at 298. The condition must produce death, degeneration, or extreme pain. *See Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996). Subjectively, the defendant must have been actually aware of a substantial risk that the inmate would suffer serious harm as a result of his actions or inactions. *See Salahuddin v. Goord*, 467 F.3d 263, 279-80 (2d Cir. 2006). Thus, the fact that a prison official did not alleviate a significant risk that he should have but did not perceive does not constitute deliberate indifference. *See Farmer*, 511 U.S. at 838.

Daniels suffers from a musculoskeletal injury due to a gunshot wound to his right leg. Correctional officials at Northern would not allow him to wear a special leg brace that he had used prior to his incarceration there. Daniels also claims that he suffers from chronic back, shoulder, hip, knee, ankle and foot pain, is taking medication for these conditions, and that, due to his disabling conditions, he was required to use a cane in order to walk safely. During his confinement at Northern, Daniels alleges, Warden Quiros, Assistant Warden Powers, Health Services Administrator Richard Furey, Dr. Wright and Nurse Erin Dolan were deliberately indifferent to his various medical needs and his disabilities. Specifically, Daniels alleges that defendants Quiros, Powers, and Wright denied his attempts to get an ankle foot orthotic and that Furey, Dolan, and Wright failed to enforce adequate treatment by restricting the Department of Correction's handling of his health concerns.[9] Daniels also alleges that he experienced pain in

---

[9] Daniels also alleges that Quiros was deliberately indifferent to his disability when he

his back due to his hands being handcuffed behind has back during recreation periods, and that defendants were deliberately indifferent to his medical claims for treatment of that back pain.

The defendants do not challenge Daniels' allegations that the pain he allegedly suffered as a result of being handcuffed during recreation was serious. The defendants, however, argue that Daniels' leg condition does not constitute a serious condition because it was not urgent and did not risk producing death, degeneration, or extreme pain. Daniels has submitted evidence describing the degeneration of his leg and spine, which he attributes to the failure to receive adequate treatment for his leg and ankle condition. Accordingly, Daniels has satisfied at least the "objective" prong of the deliberate indifference claim. Daniels' deliberate indifference claims nevertheless fail for two reasons. First, Daniels received care for numerous medical conditions and, second, the defendants' rejection of his grievances indicates a difference of opinion with respect to the necessary medical treatment rather than deliberate indifference to his needs.

### 1. Dr. Wright

Daniels' medical records reflect that from June 2010 through October 2011, he was under the care of Dr. Wright, other medical physicians, nurses and medical staff at Northern. Daniels received treatment for or consideration of his various medical complaints by medical personnel at Northern, including Dr. Wright, on several occasions during this time period.[10] *See* Pl.'s Response to Wright Aff. (doc. # 67-1), at ¶¶ 7, 18, 27, 29.

---

failed to address the pain he experienced in his back as a result of being handcuffed during recreation. He also alleges that Quiros denied him access to an ankle foot orthotic and that the inadequate substitute provided shows Quiros' deliberate indifference to his medical needs.

[10] Pl.'s Opp'n to Mot. for Summ. J. (doc. # 67), at 16. Daniels complains that the defendants' set of medical records is incomplete and, thus fails to cover the entire time of his housing at Northern, which ran from June 22, 2010 until May 17, 2011. Defendants respond that Daniels' entire medical record was not included because of it is "extremely voluminous and

The medical records reflect that Dr. Wright was responsive to Daniels' complaints about back pain.  On the dates that Dr. Wright treated Daniels for these complaints, he examined him and prescribed medication.  Defs.' Mem. in Support of Mot. for Summ. J., Ex. 9 (doc. # 60-9), at 6-10, 13-16.  When Daniels complained about his leg, defendants would not allow him to have an ankle foot orthotic due to potential safety risks.  In lieu of the orthotic, Daniels was prescribed medication, provided with x-rays, MRIs, heel lift shoe inserts, and released from Northern, with special shoes and a cane.  *See id.* at 5-6, 9, 16.

Dr. Wright states that the medical records reflect that he properly treated Daniels' complaints of pain and hand numbness and that Daniels' health was not adversely affected by the use of restraints.  *See* Defs.' Mem. in Support of Mot. Summ. J., Ex. 7, Wright Aff. (doc. # 60-7), at ¶¶ 14-16.  The claim that Dr. Wright did not provide Daniels with his requested treatment does not constitute deliberate indifference on the part of Dr. Wright, but rather Daniels' disagreement with Dr. Wright's diagnosis of the severity of the conditions and treatment of those conditions.  Such a claim is not cognizable under the Eighth Amendment.  *See Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998) (noting that "[i]t is well-established that mere disagreement over the proper treatment does not create a constitutional claim," and "[s]o long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation"); *Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986) (disagreement with the type of medical care provided is insufficient to state a constitutional claim; rather "[t]he essential test is one of medical necessity and not one simply of desirability").

---

contains many entries that are not relevant to the allegations [sic] his complaint."  Defs.' Rep. Br. (doc. # 69), at 2.

Because Daniels has failed to offer any evidence to contradict the results of physical examinations undertaken by Dr. Wright or the treatment prescribed by Dr. Wright and other medical professionals at Northern from June 2010 through October 2011, he has not demonstrated that Dr. Wright was deliberately indifferent to his serious medical needs.  There are no issues of material fact in dispute regarding the medical treatment provided by defendant Wright.  Accordingly, the motion for summary judgment is granted with respect to the Eighth Amendment claims for deliberate indifference to medical needs against defendant Dr. Wright.

   *2. Dolan, Furey, and Quiros*[11]

   Daniels also alleges that defendants Dolan and Furey were deliberately indifferent to his medical needs by frustrating his attempts to get treatment, *see* Pl.'s Opp'n to Mot. for Summ. J. (doc. # 67), at ¶¶ 9, 16, and that Quiros was indifferent to his needs by denying Daniels' attempt to get an ankle foot orthotic.  There is insufficient evidence that Dolan and Furey frustrated Daniels' attempts to receive medical treatment.  Indeed, Daniels visited medical personal for treatment several times throughout his incarceration.  Daniels also argues that Quiros was indifferent to Daniels' medical needs, however, much like his claims against the other defendants, the claim amounts to a disagreement over the necessity of the ankle foot orthotic and the denial of that treatment pursuant to prison policy.  Accordingly, the defendants are entitled to summary judgment with respect to Daniels' deliberate indifference claim against Dolan, Furey, and Quiros.

   E.  ADA claim

---

   [11] No claim for deliberate indifference lies against defendant Powers because Daniels has not demonstrated that Powers was personally involved in or even on notice of the alleged deliberate indifference to Daniels' medical needs.  *See supra.*  Daniels does not appear to have brought a deliberate indifference claim against defendants Goodhall or St. John.

Title II of the ADA authorizes suits by private citizens for money damages against public entities that violate section 12132.  *See* 42 U.S.C. § 12133 (incorporating by reference 29 U.S.C. § 794a).  It provides, in relevant part: "Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  The Supreme Court has held that Title II of the ADA applies to state prisoners.  *See Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 213 (1998).

Daniels contends that chronic conditions stemming from his gunshot wound constitute a disability within the meaning of Title II of the ADA.  He makes two types of allegations: (1) that he received inadequate treatment of his disability, which did not allow him to participate in recreation; and (2) that the requirement that he be handcuffed during recreation denied him of the right to meaningful exercise, in light of his disability.  The defendants argue that Daniels cannot establish that he was denied the opportunity to participate in state services or was otherwise discriminated against because of his disability.

The defendants argue that they provided Daniels with a reasonable accommodation—the heel lifts—that the defendants were not required to suffer an undue hardship in providing its accommodation to Daniels, and that Daniels, nevertheless, had a meaningful opportunity to exercise in his cell without the accommodation.  Specifically, defendants argue that the provision of the ankle foot orthotic that Daniels requested would impose an undue hardship because that orthotic was too dangerous for use in a maximum security prison, especially where a safer alternative was available.

19

To establish an "undue hardship" defense, the defendants must show "(a) that making a reasonable accommodation would cause it hardship, and (b) that the hardship would be undue." *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 221 (2d Cir. 2001) (citation omitted). The ADA defines undue hardship to include "the cost of the accommodation, the overall financial resources of the employer, and the type of operation of the employer." *Id.* (citing 42 U.S.C. § 12111(10)). Daniels has not responded with any argument or evidence to the defendants' argument that the provision of the ankle foot orthotic to him during recreation would pose a danger to staff and inmates. Nor has Daniels offered evidence that, in light of the danger posed by the ankle foot orthotic, the heel lifts he was given were not a reasonable accommodation.

Concerning Daniels' second argument, that, in light of his disability, he was due the reasonable accommodation of being permitted to participate in recreation time without handcuffs, he has not presented any evidence that exercise without handcuffs would accommodate his disability. Further, he has not presented sufficient evidence to show that allowing him to recreate outside of his cell without handcuffs would not, in light of the safety concerns, impose an undue hardship on the defendants. Because Daniels has failed to establish a prima facie case of failure to provide him with a reasonable accommodation, I grant defendants' motion for summary judgment with respect to Daniels' Title II ADA claim.

## IV. Conclusion

For the reasons stated above, defendants' motion for summary judgment (doc. # 60) is granted in part and denied in part as follows: the motion for summary judgment is granted with respect to the Eighth Amendment deliberate indifference claim and the ADA claim against all defendants, and with respect to the Eight Amendment deprivation of the right to meaningful

exercise claim against defendant Powers.  The motion for summary judgment is denied with respect to the Eighth Amendment deprivation of the right to meaningful exercise claim against defendants Murphy, LaJoie, Quiros, Goodhall, and St. John.

It is so ordered.

Dated at Bridgeport, Connecticut, this 17th day of July 2014.

/s/ Stefan R. Underhill
Stefan R. Underhill
United States District Judge